Good morning, Your Honor. Please record Robert Ives on behalf of the appellants Randy Holden and Marlon Holden. This case presents four primary issues for review and appeal. The first one deals with an issue of claim preclusion and the doctrine of collateral estoppel and res judicata. The issue proceeds from a state court ruling. It was tried about five years before this case was tried in the district court. The district court action was an admiralty claim, an in rem claim dealing with a foreclosure on a vessel, a federally documented vessel. The earlier state court claim presented several causes of action brought initially by Randy Holden on behalf of himself and against the Lindholms. And Mr. Lindholm cross-claimed back against Mr. Holden in that claim. Now the decision in the state court that we feel binds the district court and was not given, in our view, full faith and credit, was the collateral estoppel and res judicata issue of how the proceeds of monies held in the district court registry following the interlocutory sale of the vessel should be distributed. The state court addressed whether or not Mr. Lindholm ought to be entitled to recover monies that he had paid at that time, which was 1994, to discharge the encumbrance on the vessel. That was $62,000 and change. That claim was presented as part of the crossing claim for breach of contract. That claim was adjudicated against Mr. Lindholm. With a general verdict. By general verdict, correct. Where was that? That was the state court? That was the state court, Los Angeles District Court. That was just the general verdict for $230,000? That's right. I mean, how do we know what cause of action they bought? Your Honor, this has to do with claim preclusion. In other words, at the conclusion of the district court case, Judge Brewster awarded the monies, the $41,000 in the registry, to Mr. Lindholm. And the basis for that at that time was equitable segregation. No, I'm sorry. I didn't make my question clear. What do we know that the state verdict established? We know that the claim for breach of contract presented by Mr. Lindholm was turned away. We don't know why. We don't know if the jury found, for example, that there was a breach, but no damage, or there was a breach and damage, but there wasn't a mitigation of damage. I mean, we don't know what that means. Well, I don't agree with that completely, Your Honor, but I understand the point. It was the point that was raised on the next issue I want to address, and that has to do with collateral estoppel dealing with issue preclusion. And I think the Russell v. Place United States case that was relied upon by the court and in our briefs deals with that aspect. I'm not talking about issue preclusion now, though. I'm talking about claim preclusion. In other words, I contend that there was a claim made at the conclusion of the defendant's case in the district court to recover those monies. Even though they didn't have an affirmative claim pending, the closing argument made a pitch to have those monies awarded. Now, to my mind, that is a claim, not an issue to be determined upon the collateral estoppel construct of Russell v. Place. This is something that was litigated already, a claim that was presented between the identical parties on the identical issue, and it can't then be re-adjudicated by the district court. What was the basis of his claim for breach of contract in the state court? That what? That Mr. Holden had breached the contract for purchase of the vessel in some way. In what regard? In what detail? By not making, primarily I take it, not making payments on the contract. There's no doubt that the payments weren't made. Undisputed. Okay. So now the FIB who holds the mortgage, that eventually ends up in Mr. Linsholm's hands by assignment. Am I wrong on that? It does. And all he's asserting? Actually, I take that back. It does not end up in his hands by assignment. In fact, this very court determined that that was not the result of his machinations. Okay. And they said you can't have that assignment. But they did say that he had, Judge Brewster found that he, that there was a breach of contract. That's correct. And that he was, on an equitable basis, he was entitled to seek recovery of those monies that he paid to the FIB. That's right. Okay. Now, show me how we know from the bottom action in the state court that that was precluded, and under what case law? Okay. Under a general verdict. I understand the question. In the first place, the general verdict, I don't think, is significant in determining claim preclusion. If a claim has been presented and damages of this kind, in other words, the monies that he had paid, has been presented as evidence, then those identical parties, this identical issue of his entitlement to recover those monies, has been adjudicated and cannot be revisited. So whether he loses because his damages were not actual or approximately caused, or whether he loses because he didn't prove a breach of contract, is immaterial. In fact, it's immaterial that he didn't present equitable subrogation as one of the grounds upon which he might have recovered in the state court. The law says that you have anything that could have been litigated and actually was litigated. The could have been litigated takes in the statutory basis that he presents at the district court level. He could have presented this equitable subrogation argument at that level, and he did not. But all the facts that he espouses to Judge Brewster in that trial to support equitable subrogation were in existence at the time of the state court action and existence at the time of the district court action. So the fact that he did not litigate that claim or present that argument is of no moment to the binding effect of the claim preclusion aspect of the doctrine of equitable subrogation. So it is not important for claim preclusion analysis purposes for this court to determine exactly why he failed. He had a chance to litigate. He didn't do it. He didn't get that money. He can't go back to the well in front of Judge Brewster and say, gee, we paid that money. Equitable subrogation says we should get it back. He had his chance. He lost. Kennedy. What did Judge Brewster say about that argument? Judge Brewster, when it was initially presented, Your Honor, it was in a — in cross motions for disbursement of the funds. And I made that argument in my initial opposition to a motion brought by Mr. Lindholm to disburse the funds to him. Judge Brewster did not — and I made a cross motion for distribution to Mr. Holder. Judge Brewster denied both motions. And in doing so, although it doesn't appear in the record, he said, we're going to have to finish this case and then we'll figure out how that gets distributed. So as part of the record on appeal, there is — there are these cross motions. There is this briefing of this issue. And the judge seemingly deferred it. And when I made that argument, you know, in response to the closing, that simply wasn't persuasive. So I don't understand why it was that that issue even came up at that point. Frankly, there was no pending claim brought by the defendant. It was simply part of the closing argument, which took me somewhat by surprise. And he said, you know, by the way, we've got this money being held in the registry. It's been there for about 10 years. It ought to be distributed to my client. And Judge Brewster took that request — and I can't put my mind — myself in his mind, but apparently took that issue up and ruled on it at that point. Well, the reason I was asking all these questions, I was quickly going back to the findings, the facts and conclusions of Law Judge Brewster. And I don't see this issue addressed, either that or I missed it in here. I don't see your point addressed by Judge Brewster. If it is addressed at all, it was in the very last couple paragraphs of that finding in which he basically rules on the point of 2903. I think it's 2903, the equitable subrogation as the justification. But in its most fundamental sense, this money that's being held in the registry derives from the very same payment. And I did introduce into the record on appeal the evidence that was presented at the state court of his payment of these monies. Also, Judge Brewster, though, addresses ad nauseum the breach of contract on behalf of your client. And with your theory, as I take it, if I'm not confused here, that also should have been precluded because of the state action. It is, but for different reasons and on a different legal doctrine, Your Honor. This has to do with the second point — the second and third points that I raise on appeal dealing with collateral estoppel. And that is not issue preclusion, but — I'm sorry, not plain preclusion, but issue preclusion. And I think that we get to that estoppel, notwithstanding the infirmity raised by Judge Silverman of how do we know, by a different analysis. And that has to do with the cross-claims that were presented and also the affirmative defenses that were presented at the state court level. One of the primary defenses to our claims, Mr. Holden's claims in the state court, was that there was a breach of contract by Mr. Holden. And that went directly to all three causes of action. That was the defamation cause of action, in which there was an accusation that he had stolen the vessel. That was premised on a breach of contract, as Judge Brewster observed in his analysis. There was also the intentional infliction of emotional distress, in which we were being accused of having stolen the vessel, being a felon, being accused of a felony, and so forth. And also the malicious prosecution aspect, again, deriving directly from this. The defense that was a pivot point for Mr. Lindholm's case was he breached this contract. And therefore, he didn't have a right to do that. In fact, it's theft. So when he fails to defend these three causes of action, and any one of them might have been the one upon which the $200,000, $230,000 judgment was awarded to my client, he fails to demonstrate breach of contract. Well, we don't know. I think that was Judge Silverman's point, and you just said it. Because there's so many things thrown at the jury, how do we know what they decided? We don't know what they based it on. Well, I understand. And it could have been any theory. So why is there issue preclusion? We don't know that there was issue preclusion. Because, Your Honor, by deduction, it seems to me, legal deduction, if he had successfully demonstrated a breach of contract, that would have defeated the claims, and Mr. Holden would not have prevailed. Now, one of the things that, you know, was ---- It's not a legal deduction, though. When you throw things at a jury and they give you a general verdict, they could have done anything. They could have done anything. And that's the problem. You're asking us to assume what the jury did by making some assumptions. And I think unless I'm missing something here, I'm having a hard time. I understand what you're saying, but I don't find any specificity other than that general verdict and then making some assumption. If there's anything, I don't think you're missing anything, but I would just remind the Court that there is, in Russell v. Place, it talks about the fact that it can be demonstrated either by extrinsic evidence or from the record of the prior case. Now, in a six-week jury trial, obviously it's a little daunting in 200 exhibits to figure out how much you must put in, especially when the issue is one of exclusion of something that didn't happen. I mean, from the plaintiff's position, perspective, in trying to demonstrate this collateral estoppel issue, it is almost incumbent upon him to place the entire record, you know, refer the judge to that and say it's not in there. But you didn't do that. I did not place the entire. What I did place in the record was the evidence of damage that was placed before the Court. And, you know, if I may now turn to the issue of preclusion, there are two bases upon which we feel collateral estoppels should preclude any finding but that Mr. Holden was entitled to exclusive possession of the vessel. The first is the contract claim. The contract claim, I've already talked about the aspect of the affirmative defense to the contract claim, which quickly I submit if he was successful in demonstrating a breach of contract, that jury could have no option but to determine that my client lost on those claims that he was asserting. That didn't happen. It, therefore, impertunes the Court to conclude that that was, in fact, not shown. If there was no breach of contract, then my client had a right to exclusive possession. The second aspect goes to our affirmative claim for breach of contract. The defense there is how do we know what infirmity caused the Court not to rule in or to rule in my client's favor, or could it have been some other claim? That, you know, we did introduce, in fact, I think the problem was it might have been damage. It could have been one of several prima facie elements that caused the failure. But, in fact, the evidence of the payment was admitted without objection. In other words, the damages that he was claiming of payment of the loan was admitted without objection and was, therefore, before the Court. So there's no question that damages were demonstrated and a causal relationship with those damages. He paid that because the boat wasn't around. If we then look at the conversion cause of action, it's a very simple cause of action. The prima facie elements are simply that there be some substantial interference with the ownership or possession of property that causes damage. Damage being presented in the evidence, and I placed that in the record for this purpose. The only thing that could have caused that cause of action to fail was Mr. Lindholm's failure to demonstrate that there was some real and cognizable right to possession or ownership which was interfered with in a substantial way by my client. I'm hearing you 100 percent, and I've now, I think, refreshed my memory here. It appears to me that you've got to help me in, again, reviewing the record. I have, again, scanned my notes with regard to Judge Brewster's findings of facts and conclusions of law. Your argument appears nowhere there. So you're saying that somewhere else the judge rejected your claim preclusion or your issue preclusion argument that you made. Either that or you didn't make it because I'll have to go back. Maybe there's just too much in this record. But Judge Brewster has not one whiff in his findings with regard to your claim on issue preclusion. Unless I'm misreading this. Your Honor, I didn't. I'm sure I placed in the record Judge Brewster's ruling on the collateral estoppel and issue preclusion issues. Okay. Then I'll have to go back and find that then. In fact, that was the very, we've spent, I'm sure we've spent at least three days of the first days of trial. And he made written findings on that issue? Analyzing that. He made written findings on that? He ruled from the bench on that issue. Oh, that's in his transcript then? Yes. Oh, is that the transcript of 9-11? I believe that was the final ruling. But the day before, I'm sure we also reviewed it. I believe he made a preliminary ruling. All right. I'm on track. Thank you. Can you tell me what the status of things are? You have a $230,000 judgment against them? Well, that judgment was satisfying. Okay. And now the $41,000, $42,000 is what's at issue? The $41,000 which was being held in the registry was awarded. We don't know whether or not that's been dispersed. I don't think it has, but counsel can probably answer that question better than I. Is there anything else in issue? Attorney's fees or anything else? Yes. There was a motion brought by my client for an award of attorney's fees. Judge Brewster, again, deferred on that ruling. Basically said that he would preserve my right to present it at a later time, but based upon dependency of the appeal, he wanted to wait until the outcome of the appeal to rule on the attorney's fees issue. Thanks. Now, the final issue presented on appeal was whether or not the evidence that was presented was so overwhelming in favor of a finding that there was an illegal seizure, that is a wrongful seizure, that the court erred in ruling any other way. The reason that that was presented was two or three years ago we came before this tribunal and presented our opposition to an appeal that attempted to overturn Judge Brewster's ruling that there was no lawful basis for the initiation of the action in the federal court. This court sustained Judge Brewster on that ruling, and, therefore, as a matter of the law of the case, we went back to Judge Brewster to try this case knowing we had in our pocket a ruling that the initiation of a foreclosure action under the Preferred Ships Mortgage Act was unlawful. They did not have a lien at the time that they initiated it, and all of this action was orchestrated by Mr. Lentil. That was a ruling that Judge Brewster made as well. What he did was he paid off the loan but, in so doing, attempted to keep a sham note, a secret note, on the side with his mother-in-law. He borrowed the money from her, had her pay the bank, then he executed a separate note, an unsecured note to her, made consistent payments to her throughout the pendency until the boat was seized, and then figured a default, even though she was fully paid on the only encumbrance that she and he ever recognized, triggered a default under the other note to the bank, which he purported to have assigned to her. The judge found there was no assignment, that, in fact, there was no showing that there was even a – we contend there was no showing of any breach at all. Now, the only thing that we needed to prove at the conclusion of our appeal here was that there was malice in the wrongful seizure. The wrongful seizure actually was presented in two separate and distinct factual bases. The first seizure occurred in American Samoa when the vessel enters the harbor and is seized at gunpoint. The reason it was seized is because of the issuance of a warrant. There's already been a determination that that warrant was issued without probable cause. In fact, in the civil case, the court ruled after obtaining interrogatories, and I present this in my brief, that there was no reason that Mr. Lindholm had to seek that. He didn't believe that Mr. Holden had stolen the vessel. And he had – she then ruled, based on the interrogatories answered by the jury, that he had no probable cause to institute the criminal action. And that cost him $230,000. Well, it did. But then it cost Mr. Holden the loss of his vessel in American Samoa in 1991. Until you reach Brewster's findings that there was a breach of contract. And that goes back to your first argument. As I understand Judge Brewster, he said that because your client didn't make the payments, that Lindholm had a right to possession and a right to that boat. And so that's what brings you down the other course. But you're saying it was precluded by the prior State court action. Yes, I am. That is somewhat circuitous in that regard. Your Honor, if there are no further questions, I'll reserve my remaining time. You don't have anything to reserve, so thank you. Good morning, Your Honor. This is Guillermo W. Schneider for the Lindholms. I want to talk to you a little bit, as I did in my brief, with respect to rejudicata, equitable subrogation of the position of the mortgagee. Because I think a number of things, a number of consequences flow from what one reaches when one discusses those concepts. Are you splitting time with anybody? Yes. This was the 20 minutes between me and Mr. Markovitch on behalf of the Michelson and Brown. Have you agreed on the split? I thought we each had the same amount of time. We didn't know. No, you've got 20 minutes per side. And so you can split it or you can take it till he comes up and wrestles you into submission or. OK. He's telling me that I can have the majority of the time. All right. And I'll probably leave after about four. I'll leave about three or four minutes. All right. All right. Residue to kind of literal sense, strictly speaking, strictly defined. You can't sue me for what you already sued me before. Applicable in this case, not as to Lindholm, but as to Holden, yes. Why? Holden already sued Lindholm for intentional infliction of emotional distress arising from the sale of the boat and the repossession of the boat. Can't do it again. Holden already sued Lindholm for defamation as a result of things that happened after the sale, the transaction and the repossession of the boat. Can't do it again. Lindholm did not sue Holden for anything in the federal district court. Not one single thing. Did he sue him in state court for breach of contract and conversion? Yes, he did. Why can't he do it again in district court? Why can't he do it again in district court? He can't do it again in district court. Well, didn't Judge Brewster find that there was a breach of contract even though there was a state court breach of contract lawsuit that Lindholm lost? Lindholm cannot sue Holden in federal district court on breach of contract. But because of the general verdicts, not being specific, being inconclusive, Lindholm can still raise as a defense in the federal district court breach of contract on the part of Lindholm, on the part of Holden. But he did more than just raise it as a defense. He used it as an affirmative way to recover money, didn't he? No. No. Why not? That question was asked to Mr. Hives, and let me tell you why not. Well, before you supplement that, he's an intervener, right, in the federal court? No. Okay. No. All right. No, he's not. What happened, to answer the procedural question, and it will answer your question, Judge Silverman, also, Judge Brewster, at the conclusion of the case, before we started our argument, 30 seconds before we started our argument, he told us that he wanted us to address the question of what he's going to do with the $41,000 held in the registry. From the sale of the boat. I did. I argued the doctrine of equitable subrogation. He stepped into the shoes as a matter of law because of civil code section 2903 to the position of the bank. That's what I argued. Now, why is that not precluded by virtue of the fact that he, Lindholm, sued Holden for breach of contract? Because claim preclusion, true res judicata, is akin to double jeopardy in a criminal case. Double jeopardy tells the prosecution you can't prosecute me again for the same crime. Res judicata, in the sense of claim preclusion, says you can't sue me for damages. When those $41,000 were awarded to Lindholm by Judge Brewster, it wasn't an award of damages against Holden. It was, I've got this money from the sale of the boat. I've got to distribute it to someone. To whom do I distribute it? It is not a claim for damages. It is not an award of damages. It is not money that belongs to Holden. What if the boat had never been sold? What if the boat still sat there? What would Judge Brewster do? He'd say, here's the boat. To whom do I give the boat? I give it to the equitable subrogee who disencumbered the boat, who paid the $41,000. No, he went further than that. I read the findings. That's why I got slipped off here because of the two proceedings. I read the findings to say that he has evidence before him, Judge Brewster, that there was a breach of contract. And the breach of contract occurred when Mr. Holden did not make the mortgage payments. As a result of that, he said specifically that Lindholm had no further duties under the contract to perform, that he could take possession of the boat, and he did. There was nobody on the boat, so he took possession of the boat. So if the boat was still bobbing out there, he would give it to him because he was entitled to possession under the breach of contract. It had nothing to do with equitable subrogation. He may have still had to pay the bank, and the bank could have foreclosed, but if the boat was bobbing, and who has the boat, he would have gotten the boat, as I read the findings, in fact, because he was entitled to it because of the breach. But I disagree with that. I really think that Judge Brewster, what he did was No, I don't want to know what he thinks. I want to know, isn't that what the findings said? He said that because Holden failed to pay the mortgage payments, that there was a breach of contract, and therefore that Lindholm was entitled to possession of the boat. Yes, and that's what he used to say if he was entitled to possession of the boat, there cannot be wrongful seizure. There cannot be abuse of property. That's exactly right, and that's where counsel jumps in and says, hold the phone. I've already litigated this down in state court. That's where this circular thing starts. Litigated what? Litigated the fact that there was a breach of contract. I'm sorry. See, what I'm having trouble with here, and it's going to take some reading on my part, I have, the way I read, and you can help me, the way I read Judge Brewster's findings, he finds specifically that because of the failure of Mr. Holden to pay the mortgage payments, there was a breach of contract which entitled Lindholm to possession of the object, the boat. And what counsel is saying on the other side is, wait a minute, he tried to breach a contract in state court, so those are in conflict, and that's where I am right now. The money is irrelevant because the money is the proceeds of the possession, and the FIB loan is irrelevant too because it hadn't been paid. They don't own the boat. It's a question. Who had the right to have the boat and deal with the mortgage? Let me tell you why I can say that the breach of contract was not litigated in Los Angeles. And, you know, as soon as I said that sentence, let me retract it and say I don't know that we can say, and it's not my burden or my client's burden to show that. The United States Supreme Court in 1876, this court in Davis and Cox v. Suma Corporation, and several other districts, there's yet another Ninth Circuit court case that's cited in my brief, say not only if there's any doubt, it's open for re-litigation. And who has the burden of clarifying the doubt? The party asserting the issue of reclusion, the party asserting collateralism. And let's stop right there because that's where I lost your point, counsel. I find the transcript of 9-11 is the only evidence that I've been reading on that issue. What do you say was put into evidence by Mr. Holden relative to that issue of preclusion, that Judge Brewster then would have decided in that 9-11 hearing? First of all, I believe it was on the morning of 9-12 that Judge Brewster took the bench and said, I've made my decision. I'm not going to apply the doctrine of collateral estoppel. We are going to try the breach of contract. The only reason I say 9-11, seeing the way he references a tragedy, it might be true. And there was a lot of discussion for the two hours that we were in session that morning. Okay. What did he present? What did Mr. Ives present? The verdicts in the general verdicts in the state court action, the findings, which I think do absolutely nothing to clarify the issue. There were a couple of special findings, as I remember. There were. The complaint in the state court action. But what Judge Brewster said, and this is in the transcript, I'm not just speculating, is I don't know. I can't tell. Show me. And that showing wasn't made. And the reason it wasn't made, I suggest to you in my argument here, is because it can't be made. It can't be made. Well, then, are we saying that counsel's argument was that you look at the whole proceeding down below, he admitted an oral argument. I believe that he didn't put that in. So you're saying the limited amount that he put in cannot cause the issue preclusion res judicata, whatever you call it. Right. Right. If memory serves me correctly in the transcript, Judge Brewster at one point said, what were the instructions of the jury in the L.A. case? I remember that. But even though it's not my burden to show that you can't tell, let me tell you why you can't tell. Malice. Was it that? Well, I don't know. The special findings said we find malice, oppression, or fraud. Yes. Which one? We don't know. Malice, oppression, or fraud as to the conduct upon which you base your finding of liability. This is in the L.A. case. Well, what was the conduct upon which you found your liability? Was it defamation? We don't know. Was it intentional infliction of emotional distress because of this interference with this litigation involving the stepdaughter? We don't know. Was it malicious prosecution? We don't know. That's why those special findings do nothing to clarify the inconclusiveness of the general verdict. And I think that Judge Brewster struggled with that and kept saying, not in these words exactly, help me. Give me something. How do I know what was tried in that case? And it's no wonder to me that on September 12th he took the bench and said, we're going to retry that issue because I can't tell from the L.A. case and what you presented me from the L.A. case what happened. So I think that the breach of contract was properly retried. And this idea that Lindholm asserted breach of contract as a defense to defamation, to intentional infliction of emotional distress, to malicious prosecution in the L.A. case, somehow because Lindholm recovered, that defense failed. Not so. And the example I used, and I'm not going to waste time on it, but the example I used was the repossession of an automobile. Clearly there's a breach of contract when the payment is not made. Clearly the security interest holder has a right to possession. And sometimes they use unlawful, sometimes tortious means to regain possession of the vehicle that they're entitled to get. Does it vitiate the right to possession? No, it doesn't vitiate the right to possession. Does the fact that the person didn't make his payment, in other words, does the fact that the owner-debtor breached the agreement to make monthly payments, is that a defense to the punch in the nose that the guy got when the repossessor went out to get the car? Is that a defense to intentional infliction of emotional distress when they harass the guy to bring it back? No, it's not. So the idea that just because Lindholm asserted a breach of contract as a defense in the L.A. case didn't tell us anything. I really think that one searches in vain, as Judge Brewster did, to find a way to say, yes, this issue was litigated and tried, and it was determined, and it wasn't. And he gave it time, and he gave us time, and he gave us opportunity. I know, Your Honor, you already said that, you know, it all depends on the possession. But I really think that- No, all I said was you were talking about if the boat was bobbing in the water. Maybe it wasn't such a great example, and that's not the case. We have the $41,000. And I tell you, Judge Brewster awarded the $41,000 to the Lindholms not because Holden breached the contract, not for any reason other than 2903, you disencumbered the boat, you stepped into the shoes of the bank. And, you know, in Kenny v. Kenny, that case with the husband and wife, wife pays off dad the six grand that dad had loaned the couple for the house. Then they got a divorce, and it came to splitting up the assets. And she says, give me my $6,000 first because I disencumbered the house. And the Court of Appeals says, you're absolutely right. Here's your $6,000 before we start splitting the rest of it. And that's the basis upon which the $41,000 was awarded. And even using the word awarded, if we want to be precise, is not correct. That's the basis upon which Judge Brewster ordered the distribution of the funds to the mortgagee. It's as though the bank were there. It's as though the bank were there. Well, in effect, the equitable remedy was doing that. It was saying if the bank was here today, it would be entitled because it put out $62,000. Lindholm paid off the $62,000. If the boat would have brought $150,000, we'd have a whole new issue here. We'd start playing some games. But right now, the $41,000 was less than what Lindholm paid to the FIB to get rid, through his various means, to get rid of the mortgage. And we don't have to get into, as you put it, the games. That's right. Because it only brought $41,000. That's right. Yes. And again, though, it wasn't based on a breach of contract. There is one other point that I want to touch on, and it's this. There's the argument made by Mr. Ives that by virtue of Lindholm having sued for conversion, that somehow that resolved the issue of the right to possession. Can we stop just a second? You said it wasn't based on breach of contract. I think that Judge Brewster's findings got the point that there was no problem with getting the boat back and selling it because there was a breach of contract. Yes. Because Lindholm had a right to possession. Yes. And all the money represents is what's left after all this process went through. That's the way I read Judge's findings. Okay. Yes. Yes. Yes. On the conversion, a couple of things. When Mr. Ives says that the conversion, Lindholm's failure to prevail on his cause of action for conversion because he got a no from the jury on the general verdict on his crime, somehow that establishes the right to possession that Judge Brewster should have followed. Not so at all. He got to have damages. How do we know it wasn't a failure of damages? Okay. But even if one were to say, I view the no general verdict, the no to Lindholm on the general verdict on the cause of action for a conversion as some indication that possession was litigated and decided in the L.A. case, that would be as to Lindholm, the contracting party who's claiming a breach of contract. That would not be to Dwight Lindholm standing in the shoes of FIB. Lindholm is one person, but Lindholm in this litigation was a contracting party who claims that he was aggrieved by Holden's breach and was also the person standing in the shoes of the mortgagee. It seems to be in that regard, it seemed to me that the judge proceeded on the boat and the contract, which was the contract of sale for boat, which wrapped around the mortgage. And then he proceeded when he looked at the money on the debt. And your description seems to fit that. That is, that Lindholm fit in both places. He not only fit the person in the contract of sale, but he assumed the position of FIB in the debt track. Right. And your argument has to go on that in order to get to the money. Just like Mrs. Kenney and Kenney versus Kenney. When they went to the court for the distribution of the marital assets, she stepped first before the court and said, I'm here in the position of my father who loaned money to us to buy this house, who held the security interest, the mortgage on the house. Give me my $6,000 based on that. Court of Appeals says, here's the $6,000. Now, Mrs. Kenney stepped back and now we look at the relationship with the money that's left when we divide that. And had there been more money brought by the vote, I'm sure it's speculation. I'm sure that's what Judge Brewster would have done. I see that there are two minutes and 40 seconds left, and I'd like to pass to Mr. Merkovich. Good idea. Otherwise, you'll have to buy lunch. Good morning, Your Honors. I'm glad I don't have to say good afternoon. My name is Joseph Merkovich, and I represent the cross defendants, the estate of Gaius Michelson and Harriet Brown. There are two parties to this action. The estate of Gaius Michelson is really involved in both claims by Randolph Holden and by Marlon Holden, and Harriet Brown is in the claim solely by Marlon Holden. Did the Browns and the Michelsons bring the action first, and how did Lindholm get in this action? That would take more than two minutes. Well, did they intervene? No. Michelson started the action when he was alive, and he foreclosed the mortgage on the vessel. Yes. And then Holden then brought a cross claim against the Lindholms. And at least the caption was, but in the body of the complaint, he named both Brown and Michelson. And then through the evolution or integrity, however you want to call it, those parties were added to the case. Okay. I knew they came in later. That's all I wanted to know. As far as the claim of Mr. Holden is concerned, Randolph Holden, these are both factual and not really dependent, as I see it, upon the collateral estoppel argument. They're to be reviewed by this court by the clear error standard and not a de novo. And I can see no argument made either in the briefs or by Mr. Hives that the judge abused his discretion or at least that he failed to prove that there was clear error either on the wrongful seizure or on the abuse of process action, both of which are involving at least the estate of Michelson. And, again, Judge Brewster spent about four weeks or so in the court trial trying this case. He spent a considerable amount of time on this case. And this wasn't a case in which it was a two-day bench trial. As far as Mr. Marland Holden's appeal is concerned, that is the case in which both the estate of Michelson and Harry Brown are involved. There's been no mention of Marland Holden at all. I mean, he's scarcely mentioned in the briefs. He wasn't even mentioned here today in oral argument. And I think that the appellants have failed to prove that their burden of showing that there was clear error in the lower court, as far as the judgment in favor of the appellees against the appellant Marland Holden. There's no other questions? I guess not. Thank you. Thank you. You've used your time. I'll give you a minute in rebuttal if you think you need it. One quick point, and that has to do with Judge Nelson's analysis of the debt track versus the contract track. And also it seems to me the time spent talking about the what do we know about what happened in the lower court, the claim preclusion aspect of the res judicata doctrine, it seems to me, needs to be segregated from the analysis and the ruminations about what we can know from a general verdict. And I made that point at the top of my previous argument. I want to underscore it now. Whether or not there's a debt track where he stands in the shoes of the bank and he's stepped into that and there's an equitable reason to award that money, or whether or not this is a contract analysis, which I would submit based upon Judge Brewster's findings of fact it is, the analysis has to remain the same. And that is that Mr. Lindholm, without objection, without any preclusion or restrictions, went to the superior court and presented an argument to recover the monies that he now receives based upon the very same facts from Judge Brewster. I think nothing more than that need be said because he can't get it. If this were a judgment or an administrative hearing or anything else that had already determined this, I'm certain that Judge Brewster, seeing that, would not award the monies to him. Even if he saw that equitable subrogation might apply, there was a determination in that administrative hearing or whatever it may be that precludes him from doing so. And that's a second bite of the apple. That's what this law was intended to prevent. That's what Mr. Holden already won after six weeks of trial in Los Angeles court. And it's not something that should be overturned by a distribution or a disbursement or whatever else you may call that money. That money was already sought and denied. All right. Thank you. Thank you. The case just argued to be submitted, and for the day we'll be in recess. All rise. Court is adjourned.
judges: Brunetti, Tg Nelson, Silverman